and for the appellant, Mr. Young, for the appellant, Mr. Scott. Mr. Young, you may proceed. May it please the Court, Counsel. Good afternoon. My name is Jason Young and I represent Mr. Russo, the respondent in this case. Our appeal stems from one aspect of the trial court's judgment on dissolution of marriage. That is the trial court's classification of a single asset, the bonuses Mr. Russo received in connection with his shareholder interest in the corporation he worked for. In regard to the classification of marital property, the standard review is normally whether the trial court's finding was against the manifest way to the evidence. However, in this case, given that the facts are not disputed and there's no question of credibility regarding the witnesses, the proper standard review is de novo. The Illinois Marriage and Dissolution of Marriage Act creates a presumption that all property acquired during the marriage is marital property. This presumption can be rebutted if the spouse claiming the property is non-marital can't establish by clear and convincing evidence that the property falls within one of the exceptions of the statute. In this case, Mr. Russo has claimed and the trial court found that he had established that it fell within one of those exceptions. That finding is not supported by the evidence and does not coincide with the case law in this matter. To fall within the exception that the court found, Mr. Russo needed to prove by clear and convincing evidence not only that the property was income from a non-marital asset, but that the income was not attributable to his personal efforts. He must establish both prongs of that by clear and convincing evidence. In this case, it's undisputed that he satisfied the first prong. The shareholder interest in the corporation was purchased before the marriage took place and that was non-marital. What is questioned is whether or not the bonuses that stem from that interest were non-marital in nature as whether or not they were not attributable to his personal efforts. Let's say there is no case law in this and this is the first time this has ever come up. So a doctor works for or is part of a radiology group. In addition to his income from that that we denote as just income, I mean salary, he gets bonuses. He says the bonuses are non-marital because they just sort of flow to him without him thinking about it or doing anything about it, right? What the hell sense does that make? In terms of if his business is not successful, he won't get the bonuses unless he does the work that he's both required to do and he ought to be invested in doing, given that he has a share of the business. There won't be any bonuses at the end of the year or every other year or whenever they are. That boggles my mind that that would be deemed, I don't care what you call it, passive income. It's generated by the work of he and his colleagues. If he and his colleagues didn't do what they're supposed to do, there wouldn't be any bonuses to distribute. Does that make sense? It does, and I agree with your honor. So you think that's what the law ought to be, but it's not? I think the law is that if he could demonstrate that it was not attributable to his personal efforts, for example, as you stated, if he could demonstrate that he was able to receive these bonuses whether or not he worked there, if he was able to maintain the shareholder's interest whether or not he worked there. Those aren't the facts in this case. These are the facts that he's a working radiologist for this group, and any work that he does helps generate profit if the business is successful, and apparently it is because they distribute bonuses. I agree. Well, then how can you prove by clear and convincing evidence that... We don't know what the facts were. We don't know if he was able to demonstrate that he would be entitled to bonuses even if he didn't work there. I think that is the significant point here is that he didn't provide enough evidence showing what entitled him to these bonuses, and the only evidence that has anything to do with his entitlement to these bonuses, I would feel is in the employment agreement that states the corporation under the compensation section states that the corporation shall advance money to the employees deemed at salary and bonuses, but they're only entitled to that money if they meet the requirements of working there. If he could have, for example, in the Samarja case that the trial court relied on, if he could have presented evidence from somebody from the corporation saying that these bonuses have nothing to do with his employment, then that would be a different situation, but we don't have that here, and the requirements of the statute and the case law are that he proves by clear and convincing evidence that they're not attributable to his personal efforts. We don't have that here. That whole basis of evidence is void in the record. The only mention of these bonuses is him stating that he received the bonuses because he was a shareholder. That satisfies the first prong of the test, but it doesn't have anything to do with the second test, and that situation is similar to what the second district found in In Re Marriage of Schmidt. In that case, the spouse claiming non-marital property testified and presented evidence that the purchase of property was made with income he received from a non-marital asset, and his ownership in that business was non-maritable. The court ruled that he hadn't proven by clear and convincing evidence that it wasn't also attributable to his personal efforts. Well, this seems so reasonable. Why did Judge Otwell not grasp it? I think it was the lack of any specific case really on point. I think Judge Otwell felt that because the income was passive in nature and it wasn't directly related to, it wasn't a performance bonus. It was a bonus that was given to all shareholders based on the profitability of the whole. So how is it any different than profit sharing? That's what I couldn't figure out. Isn't it basically profit sharing among the shareholders? I think it is, but the employment agreement seems to imply that it's profit sharing, but you're only entitled to this profit sharing if you meet these requirements. But there's no evidence on the record to explain any of this. Mr. Russo simply said, I get these bonuses because of my shareholder interest, and that's it. He didn't say, I get these bonuses regardless of anything. I think the fact that there just isn't sufficient evidence, and he didn't meet the standard of clear and convincing evidence, and the case law states that any dispute or... Did anybody ask him at trial? No. Nobody asked him at trial. Nobody asked him anything about these bonuses. Mr. Scott in his brief points out that Ms. Russo had the opportunity to ask these questions, but I think that shifts the burden to her, and the burden is specifically on the spouse claiming that the property is non-marital to establish by clear and convincing evidence that it is non-marital. The presumption is that it's marital property. Nobody asked the question, and the answers aren't there in the record. And because the evidence isn't there, the trial court didn't have sufficient basis to make this ruling. The dispute between marital and non-marital property had to come down on the side of the presumption and that it was marital. The case law says that all these disputes are to be resolved in favor of finding that the property is marital. And essentially, if there's no further questions, that's pretty much the argument. We would ask that this Court reverse the finding and find that the classification of the bonuses as non-marital property was error, and we'll find that they should be classified as marital property. Thank you. Mr. Scott. May it please the Court. I think that there is, first of all, there's a dispute as to whether there is a de novo review or whether it's a manifest weight. And we believe that this is a manifest weight because of the fact that it is a court's determination as to property. He claims there's no dispute as to facts, yet even in his brief, there's a dispute as to the fact that what is this payment that is generated from stock ownership. There's also, he claims there's no credibility as to witnesses. Well, if there's no credibility as to witnesses, what are we doing here? Because the witness that we put on is Dr. Russo. And to kind of clear this up a little bit, what occurs in this practice is that they have physicians that they hire under the employment agreement. It's exactly the same as Dr. Russo's employment agreement that is referred to, I believe it's Exhibit 17 or 18. It's in the appendix. And under the terms of the compensation of every doctor that is there, they receive different types of employment, that they receive different types of compensation. One is the base employment. The base employment, they have to perform what they call the bar or the minimum number of hours or units, is what they characterize it as. And if they perform that, then they don't owe the company back money for an advancement towards their base. Then the second thing, which is what I think is a little bit different, Justice Connect, that you were talking about, is they have performance-related additions to base. So if I am a physician that performs so many units above base bar for everybody, I receive quarterly payments of unit pay, which is directly related to performance. So if Justice Appleton doesn't perform like Justice Connect, then in fact there's differences in the unit pay from zero to whatever is done. And Dr. Russo clearly went through all the different types of bonuses, not bonuses, I'm sorry, the unit pay and the base pay. With regard to the bonus, it is only paid based upon stockholder ownership. It is not based upon, I mean it's across the board, you have to be a stockholder. So if there are two stockholders, then the entire profit of the ownership of stock is divided by two. If there are 15 stockholders, it's 15. It is not related to Dr. Russo's performance. Now you could say, well he's one of 15 or one of 32, so some of his work must have generated profit and been part of that. And at most you would say we've got 30 shareholders or 15 shareholders, maybe one-fifteenth is merit. But it's additional W-2 income. Pardon me? Isn't it additional? They run it through on a W-2 income instead of sending out K-1s because that's how their accountant does it, and Dr. Russo acknowledged in his testimony that that's how the company does that. So just because it's classed in W-2 income does not mean that it is not generated through a non-marital source. Contrary to what was said in the brief of counsel in the reply brief, the agreement for Dr. Russo for employment is exactly the same as non-shareholder positions. So that term bonus that is used as a blanket compensation statement in there applies to both non-shareholder positions and shareholder positions uniformly. And the only way that any funds are paid out of the corporate operations over and above what you earn through your efforts is if you chose to buy in stock. And the stock agreement was entered into evidence as a separate stock. So anybody can get a bonus if they buy stock? If you buy stock and are allowed to be a shareholder, then you would receive equally whatever your percentage share is. It isn't tied to whether I worked more than you did as a shareholder or whether I produced more than you did as a shareholder. It's from ownership. Is there evidence in the record of the units that the doctor received? There's evidence on unit pay that he testified. That he received, not just the existence of the concept. No, no, yeah. There's evidence there. And we did that with his paycheck, Your Honor. We went through and we showed on his paycheck the money that came in through the distribution at year end of profits, the unit that he receives on a quarterly basis, and his base out. Isn't it fair to infer, then, that the more units he receives, or the more units he earns, the better the corporation does? And the better the corporation does, the more bonus money there is to distribute? Well, actually, no. I would say that the more units that he receives for personal efforts, the less is in the profit pool. But he's not getting a share of the profits from the unit pay. He's not getting everything extra. He's not getting dollar for dollar for what they bill for the units. That's correct. Yeah. Well, then, the better he does that, the more he bills the profit pool. Well, that's true to some extent. But he also receives direct compensation for the extra units that he puts in. Right. But the direct compensation, it's not dollar for dollar. I don't believe it is, Your Honor. And I would assume that it's way, way less than dollar for dollar. Because otherwise, you wouldn't have any way to build up the bonus pool. Except that the bonus pool runs uniformly across the board for all shareholders. So you cannot say that this is compensated due to his direct efforts. He doesn't earn enough money to get the bonuses that he receives. It is from the sharing of all of the positions, be they employees or be they shareholder positions. And so there is no – he only receives that through stock ownership. And because of that, then the court said, because it is traced to stock ownership, I'm making this a non – I'm deeming this to be a non-marital, because I believe that the testimony is such that the majority of that money, if not all that money, comes from not his personal efforts, but from his ownership in the personal efforts of all the positions that practice it. The court also did an adjustment. If you look at the court's division of property, the court made an adjustment of $73,000 of adjustments, just that it called an equitable adjustment between more than 50% going to Dr. Marina Russo. And that the court has adjusted out, even if you took his number of shareholders and divided the money that he received by one-fifteenth, or one – I think at the time it was one-fifteenth. I mean, she already received more than that if you were to throw that back into the marital estate. So what I think the court did is the court recognized that this was the earnings that came off of ownership versus earnings from his personal efforts. And it's always a problem when you have closely held corporations, like the family corporations, Smarja, and the other ones, where money is generated. And in Smarja, it was similar to this, in that the son worked for the company and had stock ownership. And it came out, I guess, a spoke, you could say, of profit sharing for the year. But they made the determination and they split it out on stock ownership. Now, counsel says he has to say whether or not he would get the money if he worked there, or didn't work there, or that type of thing. I don't – in professional business contracts, and I think the stock purchase agreement says this, is that if you quit being associated with the company, you have to sell back your stock. So, I mean, that's, I guess, a non-starter. You couldn't say that I could own the stock if I'm not, you know, somehow still at the company. I can't own that stock. So I can't transfer stock, like, to someone that is not working for the company. And that's in the stock agreement. But it doesn't remove the fact that earnings off of non-marital stock, and it's clearly non-marital stock, are non-marital. And the judge so found it. And I think in all of these type of corporations, a judge makes a determination based upon his balancing of the evidence and his determination as to, with this many physicians, basically, that are shareholder physicians, sharing not only their – any profit in the company, but the profit generated from employee physicians, that it is not directly attributable to his personal equity. And that's a judgment call. And the only evidence before the court is the evidence that Mrs. Dr. Russo says is credible. In her brief, she says, there's no question of credibility. What this guy says is true. We believe what he says is true, which means that what he is saying is that this is not associated with what I do for a living. It's not associated with what I bill because it is associated with what I own. And that is, in essence, the crux of the case before you. And like counsel, it's pretty – there's three or four cases for you to look at. I think you're familiar with all of those. I think that in your situation, I think to reverse you would have to find it's against the manifest way of the evidence. I don't think you can do that. The only evidence before the court is that this is not related to personal efforts. There's no contrary evidence in the record. There's no – he wasn't even asked these questions that now came up on the field. It wasn't even presented as if it was an issue because of the fact that Dr. Russo – Craig Russo. I'll keep two doctors. They're both physicians. Dr. Craig Russo testified very clearly and did a clear trace with each bonus paid and each trace into the account. And each time went over this whole methodology of what is set up at the radiology group. If the court has any questions, I'll attempt to answer them. I don't think so. Thank you very much. Butler? Just quickly, I think the proper standard review is de novo. We didn't challenge – we didn't say any of the facts are disputed. We're saying these are the facts that were presented in evidence and this is the testimony that was presented. We're not saying that he presented false testimony or his testimony was incorrect. We're just saying that the evidence wasn't sufficient is what our argument is on appeal. It's not challenging any of the evidence in the trial court. So the proper standard review is de novo. There's not any credibility determinations to be made by the trial court. Mr. Scott's explanation of this employment agreement and how there's 15 shareholders and all of that information that he provided that could have been helpful to the trial court was never presented to the trial court. None of that information was presented to the trial court. The only information presented to the trial court was Dr. Craig Russo testified, I receive a base salary, I receive unit pay for any work I do beyond the minimum requirements, and I receive bonuses. If you read the employment agreement, the employment agreement that he signed the same day he signed the stock purchase agreement, keep in mind he was an employee of this corporation prior to signing the stock purchase agreement. So this was a new employment agreement he was entering into at the time he became a full shareholder. I don't know why he would sign the exact same document again if it's the same one that he used as a non-shareholder. The fact is none of this information was ever presented to the trial court. The trial court didn't have the luxury of having the situation explained to him. The only use of the word bonus in any of the testimony has to do with the bonuses he received as a shareholder interest. The employment agreement states, even though the corporation shall be advancing sums of money to the doctor and characterizing the same as salary or bonuses, I think given the language in the contract and given the testimony at trial, you have to assume the bonuses they're talking about in the employment agreement are the bonuses Mr. Russo was talking about in his testimony. And the employment agreement states that to be entitled to those bonuses, he has to meet the minimum requirements set out by the board of directors. The minimum requirements are more than merely being a shareholder. It's predicated on his continued employment and his continued personal efforts associated with the corporation. There is no evidence saying that his continued personal efforts have nothing to do with his entitlement to these bonuses. Given the fact that there is no such evidence, I don't think the trial court could find that he had established by clear and convincing evidence to overcome the presumption that the property is marital property. Given that situation, given that the evidence was insufficient, I think this court has no option but to reverse the trial court's decision saying that the evidence was not sufficient to meet the statutory exception. Thank you. You're saying that in the face of the presumption, it is simply insufficient for the person who receives the bonus to state that it had nothing to do with my personal efforts. It was simply based on stuff, because that's pretty much what he said. No, no, it isn't. He never stated that. Well, what did he say? He stated that he receives bonuses because he's a shareholder, and non-shareholders do not receive those bonuses. That's it. That's all he said about the bonuses. I get a bonus because I'm a shareholder, not because I'm a good doctor. I mean, not that I'm an exceptionally productive doctor. Do I still get the bonus even if I don't earn any unit pay? I think if you were to meet the minimum requirements. Meet the bar. Meet the bar. I'd be eligible to get the bonus. You would probably get the bonus, or whatever other requirements, criteria the Board of Directors sets out to be entitled to the bonuses. He didn't explain that. He just simply said there's a bar of minimum hours that he's required to work, but he doesn't say whether or not there's any other requirements that are necessary. There was no evidence presented from the corporation. It's simply the doctor's testimony that I get this because I'm a shareholder. Yeah, that's the first part of the test, was it's income from non-marital property. But the second part of the test is that it's also not attributable to his personal efforts. If it's based on his continued employment and his personal efforts, I think it's marital property. Thank you. I take this matter under advisement. State of recess until approval.